UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARTIN PATTERSON,

        Plaintiff,

v.

JASON KIM, M.D., *et al.*,

        Defendants.

                                             /

Case No. 1:08-cv-873

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Michael Whalen and Mary Hubbell (docket no. 20) and a motion to dismiss field by defendant Jason Kim, M.D. (docket no. 31).

      **I.**      **Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's complaint names the following defendants: Jason Kim, M.D.; Suzanne Hawkins; Health Care Unit Manager Michael Whalen; Nurse Supervisor Mary Hubbell; and

unknown parties "John and Jane Doe." Over the years that he has been incarcerated at the Michigan Department of Corrections (MDOC), plaintiff has, at times, suffered from ingrown toenails and foot fungus. Plaintiff alleged that since his transfer to the Muskegon Correctional Facility (MCF), defendants have denied his requests for medical treatment. Plaintiff has placed his recent medical history before the court in a 126-paragraph complaint, which claims that defendants' failure to treat the ingrown toenails and foot fungus violated the federal constitution and state laws, resulting in eleven separate causes of action.

Count I alleges that defendants Kim, Hawkins, Hubbell and Whalen violated his 1st, 8th and 14th Amendment rights. Count II alleges that defendants Hubbell and Whalen retaliated against him in violation of the 1st Amendment. Count III alleges that Hubbell and Whalen violated his right to petition the government for redress. Count IV alleges that Kim, Hawkins, Hubbell and Whalen violated his right to equal protection. Count V alleges that Kim, Hawkins, Hubbell and Whalen conspired to discriminate against him in violation of his civil rights. Count VI alleges that Kim, Hawkins, Hubbell and Whalen "violated Federal law by their deliberate indifference in delaying and refusing to refer Plaintiff for corrective toe surgery." Count VII alleges that Kim, Hawkins, Hubbell and Whalen "violated Federal law, by inflicting severe emotional distress and mental anguish, causing loss of sleep and pain and suffering." Count VIII alleges that Kim, Hawkins, Hubbell and Whalen violated state law by conspiring to discriminate against him. Count IX alleges that Kim, Hawkins, Hubbell and Whalen violated state law, i.e., the Elliott-Larsen Civil Rights Act. Count X alleges that Kim, Hawkins, Hubbell and Whalen violated state law "by inflicting gross negligence against Plaintiff." Finally, Count XI alleges that Kim, Hawkins, Hubbell and Whalen violated state law "by inflicting severe emotional distress and mental anguish against

Plaintiff, causing loss of sleep and pain and suffering." Plaintiff has sued all defendants in their official and individual capacities. He seeks compensatory damages, punitive damages, and a court order to immediately arrange for the examination of plaintiff's feet "by a qualified podiatrist."

## II.  Dr. Kim's Motion to dismiss

### A.  Legal Standard

Dr. Kim seeks to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

Dr. Kim has moved to dismiss this action for lack of exhaustion. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment. *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into

a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 580-581 (W.D.N.Y. 2000) (although documents filed by plaintiff and defendants with various agencies were not attached to plaintiff's complaint, court could properly consider the documents on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6); plaintiff had notice of the documents and relied upon them in bringing this action).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130. The MDOC records reflect that while plaintiff was at MCF, he pursued three grievances through Step III: MCF 2007-05-490-12i ("grievance 490") (filed May 22,

2007); MCF 2007-06-603-02e ("grievance 603") (filed June 29, 2007); and MCF 2007-08-828-12z ("grievance 828") (filed August 27, 2007). Because Policy Directive 03.02.130 was revised on July 9, 2007, grievances 490 and 603 were filed pursuant to the provisions of the earlier version of the Policy Directive (effective March 5, 2007), while grievance 828 was filed pursuant to the provisions of the revised version of the Policy Directive (effective July 9, 2007). Although different versions of the policy directive applied to these grievances, the exhaustion provisions relevant to this report are virtually identical.

A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130 at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).[1] The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

---

[1] A minor difference between the versions appears in ¶ R. Under the earlier version, the Policy Directive provided that "The issues *should* be stated briefly but concisely" (emphasis added). This variation, however, does not affect the court's analysis in this case.

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 1. Grievance 490

In this grievance, plaintiff stated that he saw Dr. Kim on May 16, 2007. At that time, the doctor told plaintiff that "there is nothing here he can do for my big right toe." *See* docket no. 31-5. Plaintiff stated that on June 4, 2006, a nurse gave him a foot basin to soak his foot and referred him to Dr. Kim. *Id.* [2] Plaintiff states that he had been having problems walking since April 3, 2007. *Id.* Since plaintiff's doctor said there was "nothing" that health services at MCF could do, plaintiff wanted to be taken to another doctor or hospital to treat his problem. *Id.* In the response to the grievance, the MDOC stated that plaintiff was seen by a medical practitioner on March 27, 2007, who ordered a foot soak and nail trim to be completed by plaintiff. *Id.* The medical practitioner did not find it necessary to refer plaintiff to a surgeon for a nail trim. *Id.* Plaintiff was last seen by a surgeon in 2005. *Id.* Plaintiff appealed this grievance through Steps II and III. *Id.* At Step III, the MDOC denied the grievance, concluding that plaintiff last saw a surgeon in 2005, that the surgeon's recommendations given at that time were not current, that the referral to a surgeon was not necessary, and that plaintiff's disagreement with the medical judgment of the medical service provider (MSP) does not equate to inappropriate treatment. *Id.* Given this record, the court concludes that plaintiff has properly exhausted this grievance with respect to Dr. Kim's alleged failure to provide medical treatment for his toe.

---

[2] The court notes that the June 4, 2006 date is inconsistent with plaintiff's complaint, which alleged that he was not transferred to MCF until November 7, 2006.

### 2. Grievance 603

In this grievance, filed on June 27, 2007, plaintiff alleged that Classification Director Mario Vialapando discriminated against him with respect to job classification and possible work assignments at MCF. *See* docket no. 31-6. This grievance is unrelated to any of plaintiff's claims asserted in this action. Accordingly, it is unnecessary to address the exhaustion of this grievance.

### 3. Grievance 828

In this grievance, filed on August 26, 2007, plaintiff set forth a lengthy narrative regarding "the rejection for the need of medical care for my infected toe on my right foot." *See* docket no. 31-7. Plaintiff saw Nurse Hix on August 13, 2007, who referred him to Dr. Kim. *Id.* At an appointment on August 23rd, plaintiff explained to the doctor that the infection resulted in problems walking and pain. *Id.* Dr. Kim advised plaintiff that "he doesn't have the time for this procedure because it is [too] much work for [one] person." *Id.* Plaintiff stated that this was a "grave condition" and that prior to arriving at MCF, he was being seen by Dr. Wisnesk at Duane Waters Hospital "where he was performing a series of surgery on my toe and that the last procedure was done on 11/15/05." *Id.* In the Step I response, the MDOC stated that plaintiff was evaluated by a nurse on August 13th for a "non-acute toe complaint" and provided with tennis shoes to help with this condition. *Id.* Plaintiff was seen on August 23rd by a medical practitioner, at which time "[t]he toe issue was not addressed." *Id.* Plaintiff was scheduled to see a nurse to evaluate his continued complaint. *Id.* Plaintiff's Step II appeal was rejected as untimely. *Id.* This rejection was upheld at Step III. *Id.* Because plaintiff filed an untimely appeal, which the MDOC rejected on that basis, he has failed to properly exhaust this grievance as required by the PLRA. *See Jones*, 549 U.S. at

218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Dr. Kim is entitled to dismissal of any claims asserted in grievance 828.

### C. Eighth Amendment claim

The only exhausted claim remaining against Dr. Kim is the claim set forth in Grievance 490, i.e., that he failed to properly treat plaintiff's toe problem and refer him to a specialist after the May 16, 2007 examination. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9. As one court observed, "[t]he Constitution decidedly does not require states to make prisons comfortable, and a

10

prison sentence is not a voucher for free health care on demand." *Lee v. Beard*, No. 4:CV-03-1026, 2008 WL 744736 at *8 (M.D. Pa. March 18, 2008).

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff's complaint does not set forth sufficient facts "to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. The gist of plaintiff's only exhausted claim is that he visited Dr. Kim on May 16, 2007, and that the doctor failed to properly treat plaintiff's toe problem at that time and failed to refer plaintiff to a surgeon. While plaintiff claims that Dr. Kim was deliberately indifferent to his health care needs, the underlying complaint alleged that plaintiff saw Dr. Kim on two occasions prior to May 16, 2007. The factual allegations in the complaint indicate that plaintiff received treatment for his ingrown toenail while at MCF. Plaintiff received an initial intake evaluation from a nurse when he transferred to MCF on November 7, 2006. Compl. at ¶ 28. Plaintiff saw Dr. Kim on December 21, 2006, at which time the doctor stated that he would reorder medical shoes for plaintiff. *Id.* at ¶ 34. Plaintiff alleged that Dr. Kim would not schedule

a follow-up appointment with a foot surgeon, but did prescribe a foot pan for plaintiff to soak his feet. *Id.*[3]

Plaintiff alleged that he was called to the health care department for an appointment to use nail clippers on February 8, 2007. *Id.* at ¶ 42. He was rescheduled due to his toe nails having grown thick and told to soak his feet in water to soften the nails. *Id.* Plaintiff alleged that the state oxford shoes caused fungus to his toes and pain from having to walk in the shoes, and that the health care department had failed to provide him with the foot pan ordered by Dr. Kim. *Id.* at ¶ 43. On May 8, 2007, plaintiff was called out to see defendant Whalen, who told plaintiff he could pick up his medical gym shoes from health care. *Id.* at ¶ 46.

The medical records and other documents attached to plaintiff's complaint indicate additional contact with health care staff regarding his toe nail problem: plaintiff was scheduled for an appointment on February 2, 2007 to evaluate the need for health services toe nail clippers; he was given a prescription athletic shoe on February 7, 2007; and he saw a nurse for his right toe on April 30, 2007. *See* docket no. 1-2 at pp. 16, 18, 30. In addition, the prison's response to grievance 490 stated that plaintiff was evaluated by a medical practitioner on March 27, 2007. *See* docket no. 31-5 at p. 2. Plaintiff has identified this medical practitioner as Dr. Kim. *See* docket no. 1-2 (Exh. N. to Compl.).

Plaintiff saw Dr. Kim on May 16, 2007, at which time "he complained about his toe infections, the need to cut his toe nails and that the medical gym shoes is [sic] not adequate due to the pressure on the top of his shoes." *Id.* at ¶ 47. Plaintiff alleged that he "needed box-toe medical

---

[3] Dr. Wisneski debrided plaintiff's toenails on November 15, 2005, and requested a two-month follow-up visit in January 2006. *See* docket no. 1-2 at p. 7. The court notes that this follow-up appointment was scheduled approximately ten months *before* plaintiff's transfer to MCF.

shoes to allow his toes room." *Id.* Dr. Kim allegedly stated that "there was nothing he could do about his [i.e., plaintiff's] toe condition." *Id.* at ¶ 48.

Plaintiff's alleged ingrown toenail and foot fungus are not "serious medical needs" sufficient to support the objective component of an Eighth Amendment claim. *See Hess v. Tulsa County Sheriff's Office*, No. 08-cv-0603, 2009 WL 1149252 at *3 (N.D. Okla. April 27, 2009) (court found that an ingrown toenail was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim); *Hall v. Conklin*, 966 F. Supp. 546, 548 (W.D. Mich. 1996) (plaintiff's Eighth Amendment claim arising from an ingrown toenail dismissed because it did not constitute serious harm "under any legitimate legal standard"); *Landfair v. Sheahan*, 878 F. Supp. 1106, 1113 (N.D. Ill. 1995) (failure to provide a prescribed foot soak medicine did not rise to the level of an Eighth Amendment violation, because the injury to be treated, athlete's foot, did not present a risk of "serious injury or death"). *Cf. Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("[a] doctor's decision not to anesthetize a toe before removing a partially torn-off toenail-like the decision to remove a big splinter or stitch a cut without anesthetic-is not the type of barbaric treatment the Eighth Amendment was intended to prevent").

Furthermore, plaintiff's complaint does not support the subjective component of an Eighth Amendment claim. Plaintiff disagreed with the manner in which Dr. Kim treated his toe and the decision not to refer him to a surgeon to trim his nails. However, a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Even if plaintiff's medical treatment was

13

deficient in some manner, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06. *See generally, Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). For both these reasons, Dr. Kim's motion to dismiss should be granted.

### III. Hubbell and Whalen's Motion for Summary Judgment

### A. Legal Standard

Defendants Hubbell and Whalen have moved for summary judgment for lack of exhaustion of administrative remedies and for the failure to state a claim. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B. Discussion**

As previously discussed, the only grievance that is applicable to plaintiff's complaint is grievance 490. However, this grievance was directed at defendant Dr. Kim. Plaintiff did not file the grievance against either defendant Hubbell or Whalen.[4] Furthermore, Hubbell and Whalen were, respectively, the responder and reviewer to grievance 490. Plaintiff cannot maintain a constitutional claim against these two defendants for responding to a grievance filed against a third person. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care"). Plaintiff has failed to properly exhaust a grievance with respect to defendants Hubbell and Whalen as required by the PLRA, *see Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93, much less state a claim against them, and therefore these two defendants are entitled to summary judgment.

---

[4] Plaintiff mistakenly relies on *Jones* for the proposition that he did not need to name any particular officials in the grievance. *See, e.g., Jones*, 549 U.S. at 218 (stating that "[t]he MDOC grievance form does not require a prisoner to identify a particular responsible party"). However, the Supreme Court's opinion in *Jones* considered a grievance filed under a previous version of Policy Directive 05.03.130. *See id.* at 206, fn. 4. As this court previously discussed, the version of Policy Directive 05.03.130 in effect at the time plaintiff filed his grievances explicitly required that he provide the names of the individuals grieved.

15

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that both defendant Dr. Kim's motion to dismiss (docket no. 31) and defendants Mary Hubbell and Michael Whalen's motion for summary judgment (docket no. 20) be **GRANTED**.


Dated:  August 12, 2009 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).